**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

**UNITED STATES OF AMERICA,**                         **Criminal No.: 05-385 (JNE/JJG)**

        **Plaintiff,**

                                      **REPORT AND**
**v.**                                                                                    **RECOMMENDATION**

**JUAN CARLOS VARGAS-QUINTERO,**

        **Defendant.**

_____

APPEARANCES

Omar Syed and Michael Cheever, Assistant United States Attorneys, on behalf of Plaintiff
United States of America

Andrew Mohring, Esq., for Defendant Juan Carlos Vargas-Quintero

_____

JEANNE J. GRAHAM, United States Magistrate Judge

      The above-entitled matter came on for hearing before the undersigned Magistrate

Judge of the District Court on December 13, 2005, on the pretrial motions of The United

States of America (the "Government") and Defendant Juan Carlos Vargas-Quintero.  This

matter is scheduled to be tried before the Honorable Joan N. Ericksen, United States District

Court for the District of Minnesota.  The case has been referred to the undersigned for

resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I.     INTRODUCTION**

      On November 15, 2005, defendant Juan Carlos Vargas-Quintero was named in a

three-count indictment charging him with (1) knowingly and intentionally conspiring to distribute

in excess of 50 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B); (2) knowingly and intentionally distributing in excess of 50 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (3) knowingly and intentionally possessing with the intent to distribute in excess of 50 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). After a hearing before the Honorable Susan R. Nelson, Magistrate Judge, United States District Court for the District of Minnesota, Defendant was ordered detained.

This Court held a pretrial motions hearing on December 13, 2005, at which Defendant was present and represented by counsel. Both parties filed pretrial motions. One witness testified for the Government at the hearing: Detective Travis Bolles of the Anoka County Sheriff's Office, Anoka, Minnesota. Six exhibits were admitted into evidence. The Government offered four exhibits, including: Government Exhibit 1 - 10/20/05 application for search warrant and supporting affidavit for a residence located on 4th Avenue, South, Minneapolis, Minnesota, a 1997 Maroon Chevrolet Malibu, and the person of the Defendant; Government Exhibit 2 - 10/20/05 search warrant for the 4th Avenue, South residence, a 1997 Maroon Chevrolet Malibu, and the person of the Defendant; Government Exhibit 3 - inventory of items seized as a result of the 10/24/05 execution of the search warrant; and (4) CD recording of interview of defendant by Detective Bolles on 10/25/05. Defendant offered two exhibits, including: Defendant Exhibit 1 - Transcript of the interview of Defendant by Detective Bolles on 10/25/05 and Defendant Exhibit 2 - Evidence Receipts (pages 2 and 3 of

2

Government Exhibit 3).

Defendant requested and received permission to file a post-hearing memorandum by December 20, 2005. The Government requested and received permission to file a post hearing memorandum by December 27, 2005. Upon request of defense counsel, the Court agreed to accept Defendant's post-hearing memorandum one day late. The Government timely filed its memorandum. The Court addresses defendant's dispositive motions in this Report and Recommendation. The non-dispositive motions of the parties are addressed in a separate Order.

## II.    FINDINGS OF FACT

1.    Detective Travis Bolles ("Detective Bolles") of the Anoka County Sheriff's Office is assigned to the Anoka Hennepin Drug Task Force ("Task Force"). Members of the Task Force are designated and trained to investigate drug crimes, among other things.

2.    During October of 2005, a Confidential Informant ("CI") told Detective Bolles that he has made substantial purchases of methamphetamine ("meth") from an Hispanic male, who usually came to the CI's house or met him at a designated location in Anoka County. The CI told Detective Bolles that there was a stash house in South Minneapolis where the meth was stored.

3.    The CI informed Detective Bolles that the man with whom he had made deals for meth in the past, (to whom Detective Bolles referred as "the third party"), contacted the CI and wanted to collect money for a drug debt the CI owed. The third party told the CI that he would send his cousin to pick up the money. The CI said this was in the normal course of their dealings. Usually, the CI made the deal with the third party and the third-

party's cousin would complete the transaction.

4.     After meeting with Detective Bolles, the drug-debt payment was set up for October 13, 2005. The Task Force set up surveillance of the CI's residence, as the arrangement was for the cousin to pick up the money at the CI's house.

5.     During the evening hours of October 13, the CI called Detective Bolles, who was on site, to say the cousin would be there soon.  Within a few minutes, a blue, Crown Victoria-type car drove into the parking lot and parked where the CI said the cousin normally parked.

6.     An Hispanic male got out of the car and went into the CI's apartment building.

7.     A couple minutes later, the CI called a member of the Task Force and said he had given the man the money, and the man would be coming out.  Seconds later the man did come out of the building and got back into the blue car.  The money was not photocopied as it was not government money.

8.     The blue car was followed by surveillance officers. Detective Bolles called a local law enforcement officer near the scene and asked that a traffic stop be made on the blue car to identify the driver.  After observing a minor traffic violation, the local officer did stop the car and identified the defendant as the driver of the blue car.

9.     Following the traffic stop, the surveillance officers continued to follow defendant, who drove the blue car to a residence located on 4th Avenue South, Minneapolis, Minnesota.

10.    On October 18, 2005, another transaction was set up between the CI and his source for meth. Calls were made by the CI to the third party at the direction of Detective

Bolles.  The deal was for one-half pound of meth at a price of $5,000. This time, the money was photocopied and the CI wore a recording device.

11.   Surveillance was set up at the residence on 4th Ave. South. This location is the alleged stash house, and is also the house to which officers followed the defendant after he picked up the drug-debt money from the CI.

12.   Surveillance observed the defendant drive a maroon Malibu, with Minnesota license plate #GZA-555, to the alleged stash house, go into the house, exit the house and then drive to the controlled buy location.

13.   The controlled buy was executed, and the defendant was followed back to the residence on 4th Ave. S..

14.   After the drug sale on October 18, 2005, Detective Bolles showed the CI a driver's license photograph of the defendant.  He asked the CI if he recognized the person in the photo.  The CI indicated the person in the photo was the cousin that always brought the drugs to the buy when he called his source, and was the person who delivered the meth on that day.

15.   On October 20, 2005, Detective secured a search warrant for the residence, the car and person of defendant.  More specifically, a Hennepin County District Court Judge signed the search warrants submitted by Detective Bolles for the residence on 4th Avenue S., the Maroon Malibu #GZA-555 and defendant's person.

16.   On October 24, 2005 another controlled drug buy was arranged via a cell phone call between the CI and the third party. The arrangement was for CI to pay $5,000 for a one-half pound of meth. The cousin, now identified as defendant, was to deliver the

5

meth to the CI in Coon Rapids, MN.

17.     Surveillance observed defendant leave the residence on 4th Avenue S., get into the Maroon Malibu (#GZA-555) and drive toward the meeting point. Once it was clear to the detectives that he was actually going towards the arranged location, officers stopped defendant, arrested him and took custody of the defendant and the car.

18.     Law enforcement suspected the meth was stashed in the airbag compartment of the car, but they could not access the compartment without risk that the airbag would deploy.  The officers instead inventoried the car for a future search.

19.     The residence on 4th Avenue S., was searched on October 24, 2005. $25,000 was recovered, as was a hand gun and drug notes.  All were found in a bedroom on the same floor as, but not in defendant's bedroom. Officers found documents identifying defendant in his bedroom.

20.     Defendant was detained overnight.  On the morning of October 25, 2005, defendant was transported to the police station and interviewed. There is no dispute he was in custody when interviewed.

21.     Detective Bolles conducted the interview.  Defendant was read his rights per *Miranda*. An interpreter was present and interpreting the English language to Spanish and vice-versa throughout the interview, except for one conversation between the defendant and interpreter described below.

22.     After reading defendant his rights the Detective asked the defendant if he understood those rights. The defendant said he did understand.

23.     Next, the Detective asked the defendant if he wished to speak to the detective. The

6

defendant said something in Spanish which the interpreter did not interpret back to English and then the defendant said "Como?". The interpreter interpreted this word as "How".

24.     No further clarifications were made.

25.     The detective said "okay", and started to refer to what had occurred that day.  During the interview, defendant did not ask for an attorney.  Eventually defendant admitted to delivering the meth.

26.     At no time during the interview, was there a clarification as to what the interpreter and defendant said that was not translated and what was meant by the question "How?".

27.     During the interview, defendant informed Detective Bolles that one-half pound of meth was in the air bag compartment of the car, and that he intended to sell the meth to the CI.

28.     The car was subsequently searched and meth was found in the airbag compartment.

## III.     DISCUSSION

Defendant brings two separate motions to suppress: (1) Motion to Suppress 10/25/05 Statement, and (2) Motion to Suppress Evidence Obtained as a Result of 10/24/05 and 10/25/05 Search and Seizure.  The focus of the briefs is defendant's claim that he did not waive his *Miranda* rights prior to questioning by Detective Bolles.  However, the Court will address the other issues in the motions as well.

### A.     Motion to Suppress 10/25/05 Statement

Defendant claims the statements made during his post-arrest interview with Detective Bolles on October 25, 2005, were made involuntarily and were obtained by impermissibly

7

deceptive methods of interrogation. Defendant asserts that because the record does not reflect an actual and unambiguous waiver of the rights to counsel and to remain silent by the defendant, the statements obtained during the interview must be suppressed. The Government contends defendant's waiver was implied and fully effectual under the applicable law.

The Fifth Amendment prohibits the use of self-incriminating statements obtained during custodial interrogation, unless there is a voluntary, knowing and intelligent waiver of the defendant's *Miranda* rights. Miranda v. Arizona, 384 U.S. 436 (1966). Under *Miranda*, before questioning suspects, law enforcement officials must inform them that: (1) they have the right to remain silent; (2) their statements may be used against them at trial; (3) they have the right to the presence of an attorney during questioning; and (4) if they cannot afford an attorney, one will be appointed. Id. at 478-79. The need to give a *Miranda* warning arises when: (1) the defendant is in custody; and (2) is interrogated. See United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

An individual may waive the protections provided by *Miranda* if the waiver is made "voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. A waiver is knowing, intelligent and voluntary if it was the product of a free and deliberate choice by the defendant who has a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412, 421 (1986). Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. Id.

8

The Government has conceded, for the purposes of this motion, that on October 25, 2005, the defendant was subject to custodial interrogation by Detective Bolles. The Court has reviewed the transcript of the Detective's October 25 interview with the defendant as well as the electronic recording of the interview. According to these exhibits, Detective Bolles informed defendant of his rights as follows:

> Q.   Juan, the Consititu...the Constitution requires I inform you that:
> I.   (interprets)
>
> Q.   You have the right to remain silent.
> I.   (interprets)
>
> Q.   Anything you say will be used in court as evidence against you.
> I.   (interprets)
>
> Q.   You are entitled to talk to a lawyer now and him [sic] present with you now or at any time during questioning.
> I.   (interprets)
>
> Q.   If you cannot afford a lawyer, one will be appointed for you without cost.
> I.   (interprets)
>
> Q.   Do you understand each of these rights?
> I.   (interprets)
> A.   (speaks)
> I.   Yes.

Government Exhibit 4, Defendant's Exhibit 1 at 1.

Following this exchange Detective Bolles asked the defendant "Do you wish to talk to me at this time?" The transcript indicates a response as interpreted by the translator of only the word "How..." (Id.). On the recording of the interview, the interpreter can be heard translating the question, and then there is another exchange between the defendant and the interpreter in Spanish. This exchange was unintelligible. At the end of the conversation, the

defendant can be heard on the recording asking "Como?", which is followed by a translation by the interpreter of only the word "How...".

There is no evidence of any further attempts to clarify defendant's answer by Detective Bolles.  Instead, the Detective's very next statement is "Okay.  What I'd like to talk to you about is yesterday you were arrested driving a car."  Following interpretation by the translator, the defendant says "Yes."  Defendant's Exhibit 1 at 2.  The interview then proceeds with an uninterrupted exchange of translated questions and answers during which defendant responds to the questions asked by the detective. As the interview progressed, defendant informed Detective Bolles that one-half pound of meth was in the air bag compartment of the car he was driving at the time he was arrested, and that he intended to sell the meth to the CI.

The Court is well aware that an explicit statement of waiver is not required to support the claim that a knowing waiver was made of a defendant's *Miranda rights*.  North Carolina v. Butler, 441 U.S. 369, 375 (1979); Thai v. Mapes, 412 F.3d 970 (8th Cir. 2005) (defendant need not make an express waiver of *Miranda* rights, such a waiver may be inferred).

However, in this case the defendant said more than the single word "Como" in response to the Detective's question about wanting to talk. One could speculate as to what he meant, and one could argue that his continued discussion with the detective was indicative of his desire to talk. But the court cannot ignore that there was first an unintelligible conversation with the interpreter and then defendant answered with a question of his own - "How?". Defendant's question could have been directed to the interpreter based upon their exchange or to the detective's question.

Further clarification might have been sought from the interpreter regarding translation

10

of the additional words spoken by the defendant or the detective's question could have been repeated in an attempt to obtain an answer more specific than "How" from the defendant. Either may have provided more clarity regarding defendant's desire to talk to the detective.

In any case, the result is that the court cannot find that the burden has been met to prove the waiver was "voluntary, knowing and intelligible", whether it be direct or implied. Accordingly, the Court recommends that defendant's Motion to Suppress 10/25/05 Statements be granted, and the statements of the defendant obtained during the October 25, 2005 custodial interview with Detective Bolles be suppressed.

### B.    Motion to Suppress Evidence

Defendant seeks suppression of any physical evidence obtained as a result of the October 24, 2005, and October 25, 2005, searches of his residence, automobile and person based on the grounds that the warrant was issued without sufficient showing of probable cause in the supporting affidavit.  Defendant's original motion papers contain boilerplate objections to the searches and his supplemental memorandum fails to provide any further argument or detail in support of his objections.  The Government contends the searches were both conducted under the authority of a state search warrant and with the information provided by defendant regarding the location of meth in the automobile during his Mirandized interview on October 25, 2005.  The Court first addresses the validity of the search under the authority of the search warrant.

### 1.    Probable Cause

A warrant must be supported by probable cause to conduct a search or to seize

11

evidence of a crime. U.S. Const. Amend IV.  The Fourth Amendment requires that a neutral and detached magistrate determine whether law enforcement officers have probable cause to conduct a search.  Warden v. Hayden, 387 U.S. 294, 301-302 (1967); United States v. James, 353 F.3d 606, 613 (8th Cir. 2003).  Probable cause exists when there are sufficient facts to justify a prudent person's belief "that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005).

Facts in a supporting affidavit must provide the issuing judge with a "substantial basis" to believe that a "fair probability" exists of finding evidence of a crime.  Gates, 462 U.S. at 238-39.  When a judge relies solely on an affidavit to issue a warrant, the judge may consider only information within the "four corners" of the affidavit.  United States v. Wells, 347, F.3d 280, 286 (8th Cir. 2003).  Courts reviewing a decision to issue a search warrant give great deference to the decision to issue the warrant and "due weight to inferences drawn" by issuing judges and local law enforcement.  Ornelas v. United States, 517 U.S. 690, 699 (1996).

In this case, the affidavit supporting the application for the search warrant was provided by Detective Bolles.  See Government Exh. 1.  At the December 13 hearing, Detective Bolles testified that he applied for a search warrant from the Hennepin County District Court on October 20, 2005.  The search warrant sought access to a single family home located on 4th Avenue South, Minneapolis, MN, a 1997 Maroon Chevrolet Malibu bearing Minnesota license plates #GZA-555 and the person of Juan Carlos Vargas-Quintero, the defendant in this case. (Id.).  Detective Bolles' supporting affidavit describes a planned drug-payment between a CI working with the detective and a third party in which the CI was to be met at his residence by

12

the cousin of the third party for retrieval of the money. (Id.). On October 13, 2005, defendant was observed arriving at the residence of the CI at the appointed hour. (Id.). The defendant was observed leaving the CI's residence a short time later and was followed by surveillance officers to the 4th Avenue South residence. (Id.). The affidavit states Detective Bolles then contacted the CI to confirm the defendant had received the funds as payment toward the outstanding drug debt. (Id.).

The supporting affidavit also describes a controlled drug buy between the CI and the same third party, in which an individual would meet the CI at an appointed location to exchange drugs for money. (Id.). The CI was equipped with an electronic transmitter and the Task Force established surveillance of both the CI and the 4th Avenue South residence. (Id.). The affidavit states that the defendant was observed arriving at the 4th Avenue South residence alone. (Id.). Defendant entered the suspect residence and was seen leaving a short time later. (Id.). Defendant entered a Chevy Malibu (#GZA-555) and was followed to the appointed location for the controlled drug buy. After the conclusion of the drug transaction, officers followed Defendant who returned to the 4th Avenue South residence. (Id.). Detective Bolles states in the affidavit that he followed the CI after the controlled buy to a predetermined location, and determined that the government-provided money had been exchanged for a quantity of substance later field tested positive for methamphetamine. (Id.). The affidavit states the Detective then confirmed that the drug buy took place with the same male the CI had made the money payment to on October 13, 2005.

The second controlled buy between the Defendant and the CI occurred within 72-hours of the application for warrant. (Id.). The search warrant was issued on October 20, 2005. See

Government's Exh. 2.   The search warrant was executed on October 24, 2005, following the arrest of the defendant who was under surveillance relating to a second controlled buy with the CI.

Defendant claims the search warrant was issued without probable cause.  The Court finds to the contrary.  As described above, the four corners of the warrant includes ample and timely information to support more than a fair probability that methamphetamine or other controlled substances, or other items relating to the sale and distribution of methamphetamine or other controlled substances, would be found at the 4th Avenue South residence, in the Chevy Malibu driven by the defendant, or on the person of the defendant.  Defendant was observed entering the 4th Avenue South residence shortly before the appointed time for the controlled buy, was observed leaving the residence and entering the Chevy Malibu, was seen driving the Malibu to the appointed drug deal location, and then observed returning to the 4th Avenue South residence in the Chevy Malibu immediately following the completion of the controlled buy.

Under these circumstances, the Court finds the searches of the residence, the Chevy Malibu, and the defendant's person, were proper as authorized by the search warrant issued on October 20, 2005.  Accordingly, the Court does not recommend a grant of defendant's motion to suppress on the basis of a lack of probable cause.

### 2.   Defendant's Statements as Grounds for Search of Vehicle

Because the Court has recommended the suppression of defendant's October 25, 2005, statements made to Detective Bolles, including the location of the meth in the Chevy Malibu, the court must reject the Government's contention that search of the vehicle was

14

lawfully based on the information provided by defendant during his *Mirandized* interview on October 25, 2005.  If the evidence seized from defendant's vehicle had been obtained solely because of the defendant's statements made during his insufficiently conducted custodial interview with Detective Bolles, suppression of that evidence might arguably be warranted. However, that is not the circumstances of this particular case.

Law enforcement officers possessed a valid and enforceable search warrant for the Chevy Malibu driven by defendant at the time of his arrest.  Therefore, the execution of the search warrant on defendant's vehicle would have resulted in the discovery and seizure of the meth hidden in the air bag compartment.  Under the doctrine of "inevitable discovery" the Court may permit the admission of illegally discovered evidence if the evidence would have been discovered through independent means.  United States v. Alverez-Gonzalez, 319 F.3d 1070, 1072 (8th Cir. 2003).  Because the Court finds the search warrant to be valid, and that execution of the search warrant alone would have resulted in the discovery and seizure of the meth in defendant's vehicle, the Court finds no basis for suppression of this evidence.

For all these reasons, the Court recommends Defendant's Motion to Suppress Evidence Obtained As A Result Of 10/24/05 and 10/25/05 Search and Seizure be denied.

**C.   Defendant's Objections to "Show-up" Identification**

Defendant's post-hearing memorandum briefly raises an objection to the identification of defendant by the CI claiming it was an inappropriately suggestive show-up identification. Although defendant did not raise this objection in a formal motion to the Court, the Government has responded to the defendant's objections in their post-hearing memorandum, and the Court will now address these objections.

Defendant, without more, states that "the record shows that [defendant] was subjected to an inappropriately suggestive show-up identification procedure." (Def't Suppl. Mem. In Support at 1). The Fifth Amendment Due Process Clause prohibits identification testimony that derives from impermissibly suggestive procedures that may lead to an irreparably mistaken identification. See Neil v. Biggers, 409 U.S. 188, 198 (1972) ("It is the likelihood of misidentification which violates a defendant's right to due process."). A single photographic display is ordinarily assumed to be impermissibly suggestive. Robinson v. Clarke, 939 F.3rd 573,575 (8th Cir. 1991).

However, "suggestive procedures, without more, do not require a holding that the due process clause has been violated." United States v. Hadley, 671 F.2d 1112, 1115 (8th Cir. 1982) (citing Mason v. Brathwaite, 432 U.S. 98, 114 (1977); Biggers, 409 U.S. at 198; Harris v. Wyrick, 644 F.2d 710, 712 (8th Cir. 1981); United State v. Anderson, 618 F.2d 487, 491 (8th Cir. 1980)). The Court must balance the corrupting effect of a suggestive procedure against the reliability of the identification to determine if testimony about the out-of-court identification and any subsequent identification violates the defendant's due process rights. See Hadley, 671 F.2d at 1115; see also Manson, 432 U.S. at 114.

A due process challenge to identification testimony is examined in two steps. First, the court must determine whether the identification procedure used by police was impermissibly suggestive. If so, then the court must determine whether, "in the totality of the circumstances, the identification was reliable even though the procedure was suggestive, and whether there is a 'very substantial likelihood of irreparable misidentification.'" Hadley, 671 F.2d at 1115 (citations omitted). Thus, testimony regarding an out-of-court identification involving

16

unnecessarily suggestive procedures will not be excluded if the totality of the circumstances indicates that the identification was still reliable enough to prevent misidentification.  Id.

In step one of the analysis, this Court finds the showing of a single photograph of the defendant to the CI and asking the CI to make an identification was an impermissibly suggestive identification procedure.  Thus, the Court turns to the second step of the analysis, reliability of the identification in the totality of the circumstances.

In determining whether the totality of the circumstances indicates that the identification was still reliable enough to prevent misidentification, the Eighth Circuit has identified the several factors for consideration including:  (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal;  (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.  Id. (citing Biggers, 409 U.S. at 199-200).

Applying the above factors to the facts of the present case, the Court finds defendant's objections to the CI identification to be without merit.  According to the hearing testimony of Detective Bolles, the CI in this case met with the defendant on both October 13 at the CI's residence and again on October 18 for the controlled buy.  Shortly after the CI met with the defendant on October 18 to complete the controlled buy, Detective Bolles showed the CI the defendant's driver's license photo, and the CI identified the defendant as the person with whom the CI had met for the drug transaction earlier in the day.  The CI also identified the defendant as the person who had come to his residence on October 13 to retrieve the payment for the drug debt, as well as the person with whom he had dealt with in other prior

17

drug transactions.

From this evidence, the Court the CI's strong familiarity with defendant makes the identification reliable enough to prevent misidentification due to the impermissibly suggestive procedure used by the Detective. The CI had participated in at least two face-to-face transactions involving criminal activity with the defendant, and indicated he had engaged in prior drug transactions with defendant in the past. The CI's identification of the defendant occurred happened at a time that is in very close proximity to the completion of the controlled buy with the defendant. The CI had also accurately described the defendant to Detective Bolles prior to the first drug-debt payment at the CI's residence. Under these circumstances, the Court concludes that the reliability of the CI's identification of the defendant via the display of his driver's license photo outweighs any possible corrupting effect of the procedures employed in the identification process. According, the Court recommends that a finding against the defendant on the issue of suppression of identification.

## VI.   CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendant's Motion to Suppress 10/25/05 Statement  (Doc. No. 30) be **GRANTED;**

2.   Defendant's Motion to Suppress Evidence Obtained As A Result of 10/24/05 and 10/25/05 Search and Seizure (Doc. No. 32) be **DENIED.**

Dated: January 11, 2006                s/Jeanne J. Graham

                                       _____
                                       JEANNE J. GRAHAM
                                       United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by January 31, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.